UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LEE BRICKEY,

       Petitioner,

                                     CASE NO. 2:12-cv-14028
v.                                  JUDGE NANCY G. EDMUNDS
                                     MAGISTRATE JUDGE PAUL KOMIVES

WILLIE SMITH,

       Respondent.
_____/

**REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT (docket #7)**

I.     RECOMMENDATION: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion for summary judgment. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Background*

Petitioner Joseph Lee Brickey is a state prisoner, currently confined at the Carson City Correctional Facility in Carson City, Michigan. Petitioner is serving a sentence of 210-480 months' imprisonment, imposed as a result of his state court conviction for five counts of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b, following a jury trial in the Washtenaw County Circuit Court. Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- On January 11, 2005, petitioner was convicted pursuant to the jury verdict. On February 17, 2005, the trial court sentenced petitioner to four concurrent terms of 210-480 months' imprisonment, and to a concurrent term of 180-480 months' imprisonment.

- Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals, raising six claims: (1) denial of right to present a defense; (2) prosecutorial misconduct; (3) denial of cross-examination; (4) improper denial of counsel's motion to withdraw; (5) improper sentencing departure; and (6) sentencing based on facts not found by the jury. On January 9, 2007, the Michigan Court of Appeals affirmed petitioner's convictions and sentences. *See People v. Brickey*, No. 261726, 2007 WL 57258 (Mich. Ct. App. Jan. 9, 2007).

- Petitioner, through counsel, sought leave to appeal in the Michigan Supreme Court, raising the six claims he raised in the court of appeals.[1] The Supreme Court denied leave to appeal in a standard order on July 30, 2007. *See People v. Brickey*, 735 N.W.2d 259 (Mich. 2007).

- On April 16, 2009, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508. Petitioner asserted three sufficiency of the evidence claims, as well as an ineffective assistance of counsel claim. The trial court denied the motion on June 4, 2009, concluding that petitioner's claims were barred by MICH. CT. R. 6.508(D)(3) because petitioner could have raised them on direct appeal. *See People v. Brickey*, No. 03-1939-FH (Washtenaw County, Mich., Cir. Ct. June 4, 2009). The trial court denied petitioner's motion for reconsideration on June 26, 2009.

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on December 11, 2009. *See People v. Brickey*, No. 294598 (Mich. Ct. App. Dec. 11, 2009).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal in a standard order on July 26, 2010. *See People v. Brickey*, 785 N.W.2d 146 (2010).

On September 10, 2012, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] As grounds for the writ, petitioner claims that there was insufficient

---

[1] Petitioner's application actually asserted seven separate claims for relief. The right to present a defense claim was separated into two claims, one asserting a general denial of his right to present a defense and one asserting a denial of his right to testify.

[2] Although petitioner's application is file-stamped September 11, 2012, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is signed and dated September 10, 2012. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on September 10, 2012.

evidence and that counsel was ineffective. Petitioner also argues that he is actually innocent, entitling him to review on the merits of his procedurally defaulted and time-barred claims. Respondent filed a motion for summary judgment on March 20, 2013, arguing that petitioner's habeas application is untimely. As of the date of this Report, petitioner has not filed a response to the motion; however, as noted above, petitioner addresses the statute of limitations issue in his petition, arguing that he is actually innocent. For the reasons that follow, the Court should grant respondent's motion for summary judgment.

B.   *Analysis*

   1.   *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

>    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>    (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. Petitioner does not argue that any provision other than subparagraph (A) governs his petition, nor do his claims implicate any of the delayed starting provisions set forth in subparagraphs (B)-(D). Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

---

[3]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

Here, petitioner's direct review ended on July 30, 2007, when the Michigan Supreme Court denied his application for leave to appeal. His conviction became final 90 days later, or on October 28, 2007, when his time for seeking *certiorari* in the United States Supreme Court expired. *See* SUP. CT. R. 13. The limitations period therefore commenced on October 29, 2007, and expired on October 29, 2008. Because petitioner's application was not filed September 10, 2012, nearly four years after the expiration of the limitations period, the application is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on April 16, 2009. By this time, the limitations period had been expired for over five months. It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.). Further, even if the motion did re-set the clock, here over two years elapsed between the conclusion of the post-conviction proceedings and the filing of petitioner's habeas application. Thus, defendant's motion for relief from judgment had no tolling effect, and petitioner's application is untimely.

2. *Actual Innocence*

Petitioner has offered nothing to rebut the foregoing calculation of the limitations period. Rather, he argues that he is entitled to have his claims considered on the merits because he is actually innocent. The Court should reject this argument.

The Supreme Court has recently held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*, *Souter*, 395 F.3d at 589-90. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, to establish the actual innocence exception "petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). As the Court explained in *McQuiggin*, "tenable actual-innocence gateway pleas are rare," *McQuiggin*, 133 S. Ct. at 1928, and "the *Schlup* standard is demanding." *Id.* at 1936.

Here, petitioner was convicted of first degree criminal sexual conduct. The undisputed evidence at trial showed that petitioner was the instructor of the JROTC program at the victim's high school, and that the victim was a member of that program. The victim testified that petitioner sexually assaulted her on several occasions at a motel. The prosecution also presented e-mails between the victim and petitioner. Petitioner testified on his own behalf, denying the victim's allegations. Petitioner also presented numerous character witnesses. Petitioner was charged with and convicted of CSC-I, rather than third degree criminal sexual conduct (CSC-III), based on his status as the victim's "teacher." In relevant part, the CSC-I statute provides:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
> . . . .
> (b) That other person is at least 13 but less than 16 years of age and any of the following:
> . . . .
> (iv) The actor is a teacher, substitute teacher, or administrator of the public school, nonpublic school, school district, or intermediate school district in which that other person is enrolled.

MICH. COMP. LAWS § 750.520b(1)(b)(iv). Petitioner contends that there is no evidence that he was a "teacher," and thus he is actually innocent of CSC-I. Petitioner's argument fails to establish a gateway actual innocence claim, for several reasons.

First, the claim is not based on any newly discovered evidence. Petitioner's employment status was well known to the parties at the time of trial. Petitioner did not claim at trial or on appeal that he was not a "teacher" under the statute, raising this issue for the first time in his post-conviction motion. While petitioner asserts a newly discovered legal argument, he doe not assert any claim of innocence based on newly discovered evidence. Petitioner's claim, based on "a new theory of defense, not newly discovered evidence," does not satisfy *Schlup*. *Johnson v. Alabama*,

256 F.3d 1156, 1172 (11th Cir. 2001); *cf. United States v. Olender*, 338 F.3d 629, 635 (6th Cir. 2003) (explaining, in context of new trial motion under the Federal Rules of Criminal procedure, that "[n]ewly discovered evidence does not include new legal theories or new interpretations of the legal significance of the evidence."). *See generally*, *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

Second, petitioner's new legal theory does not suffice to establish his actual innocence. Petitioner does not argue that he can establish his actual innocence of any criminal sexual assault on the victim. Rather, he contends that the prosecution failed to establish one element of CSC-I, and he therefore should have been convicted of the lesser offense of CSC-III. This is not the type of evidence of factual innocence that would render it a miscarriage of justice to fail to address petitioner's time barred claims on the merits. Illustrative is the Eleventh Circuit's decision in *Rozzelle v. Secretary, Fla. Dep't of Corrections*, 672 F.3d 1000 (11th Cir. 2012). In that case, the petitioner was convicted of second degree murder under Florida law. He sought to proceed on time-barred claims, arguing that he had new evidence that he did not have a "depraved mind" sufficient to support a finding of second degree murder, and that in light of this new evidence he was guilty only of manslaughter, a lesser included offense. *See id*. at 1012. The Eleventh Circuit began by noting that this actual innocence claim was "not the usual kind" because the petitioner did not "claim that he is actually innocent of all crimes related to [the victim's] beating and death," *id*. and that "[n]either the Supreme Court nor this Court has squarely considered, or held, whether a claim of this nature can satisfy *Schlup*'s 'actual innocence' requirement." *Id*. at 1013. After extensively

discussing the legal/factual innocence distinction drawn by courts in applying the miscarriage of justice exception, *see id*. at 1013-15, the court concluded that a claim such as the petitioner's "fails to state a cognizable actual innocence claim under *Schlup*." The court reached this conclusion for three reasons.

First, the court explained, "the Supreme Court . . . ha[s] repeatedly emphasized that circumstances meriting the consideration of procedurally defaulted or barred constitutional claims are 'extremely rare' and apply only in the 'extraordinary case.'" *Id*. at 1015 (quoting *Schlup*, 513 U.S. at 324). Because "almost all crimes with degrees could face" such a challenge, allowing such claims "would substantially expand the scope of the actual innocence exception" and would adversely affect the federal-state balance by "broaden[ing] the question from whether the petitioner is completely innocent to whether the jury convicted the petitioner of the accurate degree of state crime, a significantly more intrusive manner of review." *Id*. at 1016. Second, the court reasoned, "the Supreme Court's categorical language in actual innocence cases does not suggest that it is narrowly slicing the various degrees of wrongdoing," *id*. and in the cases addressing the actual innocence exception "the petitioners disclaimed any involvement with the crime." *Id*. (discussing *Schlup*, 513 U.S. at 324, 331; *House v. Bell*, 547 U.S. 518, 554 (2006)). Third, the court explained that "the nature of *Schlup*'s evidentiary inquiry also supports this conclusion." *Id*. The *Schlup* standard requires new reliable evidence of innocence so compelling that, viewed in light of the record as a whole, it "'undermine[s] confidence in the result of the trial' such that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id*. at 1017 (quoting *House*, 547 U.S. at 537). "Evidence that would at best substitute one criminal homicide conviction for another homicide conviction," the court reasoned, "is ordinarily not of this

9

caliber." *Id*.

For these reasons, the Eleventh Circuit concluded that "'actual innocence,' whatever its outer boundaries, does not discern 'extremely rare,' 'extraordinary' 'miscarriages of justice' in shades of gray." *Id*. (quoting *Schlup*, 513 U.S. at 321). Thus, a petitioner's "individual interest in reducing his . . . conviction to a lesser included . . . conviction does not make the AEDPA unconstitutional nor does it outweigh 'the societal interests in finality, comity, and conservation of scarce judicial resources' that AEDPA's one-year limitation period protects." *Id*. (quoting *Schlup*, 513 U.S. at 324). Although the Sixth Circuit has not yet addressed this issue, the Eleventh Circuit's reasoning is persuasive. Further, other courts that have considered the issue have likewise concluded that newly discovered evidence that would merely lower the degree of offense does not establish an actual innocence claim. *See Black v. Workman*, 682 F.3d 880, 915 (10th Cir. 2010); *Sanchez v. Lee*, No. 10 Civ. 7719, 2011 WL 924859, at *36 (Mar. 16, 2011), *magistrate judge's report adopted*, 2011 WL 3477314 (S.D.N.Y. Aug. 8, 2011), *aff'd*, 508 Fed. Appx. 46 (2d Cir. 2013); *Clark v. Martel*, No. S-08-2949, 2009 WL 3489410, at *5 (E.D. Cal. Oct. 26, 2009), *aff'd*, 451 Fed. Appx. 695 (9th Cir. 2011); *Fishell v. Jones*, No. 1:06CV9, 2009 WL 160796, at *11 (W.D. Mich. Jan. 22, 2009).[4] Because petitioner's new "evidence" would do nothing more than lower his offense from first to third degree criminal sexual conduct, failure to address the merits of his time-barred claims

---

[4]Further, although the Supreme Court has not addressed this issue, it has suggested that the actual innocence inquiry is not necessarily limited to the actual offense of conviction. In *Bousley v. United States*, 523 U.S. 614 (1998), the petitioner sought review of procedurally defaulted claims challenging his guilty plea on the basis that he was actually innocent of the offense for which he was convicted. The Court explained that "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges," even though he was not convicted of those charges. *Bousley*, 523 U.S. at 624.

would not result in a fundamental miscarriage of justice.

Third, even if petitioner's claim was based on newly discovered evidence rather than a new legal theory, and even if petitioner's claim that he was only guilty of third rather than first degree criminal sexual conduct stated a cognizable actual innocence claim, petitioner cannot show that he is actually innocent. Neither the criminal sexual conduct statute specifically nor the Michigan Penal Code generally defines the term "teacher" as used in § 750.520b. Petitioner relies on the definition of "teacher" set forth in the Michigan Tenure Act, which defines "teacher" as "a certificated individual employed for a full school year by any board of education or controlling board." MICH. COMP. LAWS § 38.71(1). That definition, however, merely defines the term teacher "as used in this act." *Id*. The definition, therefore, has no application outside of the Tenure Act. Because "teacher" is undefined in the Penal Code, the term "must be accorded its plain and ordinary meaning," and must be interpreted "'according to the fair import of [the] terms, to promote justice and to effect the objects of the law.'" *People v. Flick*, 487 Mich. 1, 11, 790 N.W.2d 295, 301 (2010) (quoting MICH. COMP. LAWS § 750.2). In interpreting the meaning of this term, it is "helpful to consult the definitions in a lay dictionary." *Id*. A teacher is defined as "[o]ne who or that which teaches or instructs; an instructor; . . . spec. one whose function is to give instruction, esp. in a school." OXFORD ENGLISH DICTIONARY (available online at <<http://www.oed.com/view/Entry/198350?rskey=UTvp9w&result= 1&isAdvanced=false#eid>>); *see also*, BLACK'S LAW DICTIONARY 1463 (6th ed. 1992) ("One who teaches or instructs."). There is no question that under this definition, petitioner was a teacher, that is, one who taught or instructed. The undisputed evidence showed that petitioner was an instructor for a high school JROTC program, both petitioner and his character witnesses referred to petitioner as a teacher, and absences for JROTC reasons were considered

school-related absences. Further, this interpretation is proper to "effect the objects of the law," MICH. COMP. LAWS § 750.2, which in the case of § 750.520b(1)(b)(iv) is protect minors from sexual assault at the hands of school instructors in whose care they are entrusted and with respect to whom they are likely to feel an inability to resist sexual advances. Under any common understanding of the term, petitioner was the victim's "teacher." Thus, his actual innocence claim is without merit.[5]

C.   *Recommendation Regarding Certificate of Appealability*

1.   *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that

---

[5]Although there are no Michigan cases discussing the meaning of "teacher" as used in the sexual assault statutes, cases from other jurisdictions support the foregoing conclusion. Most on point, in *Hart v. State*, 738 S.E.2d 331 (Ga. Ct. App. 2013), the defendant was a paraprofessional who assisted classroom teachers. He was charged under a state statute which, similar to § 750.520b(1)(b)(iv), provides that a person "'commits sexual assault when that person . . . [i]s a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school.'" *Id.* at 333 (quoting GA. CODE ANN. § 16–6–5.1(b)(1)). The court rejected the defendant's argument that he was not a teacher because the Georgia Education Code separately defines "teachers" and "paraprofessional." The court reasoned that the common meaning of the word teacher encompasses a paraprofessional that provides instruction to students, and that a contrary conclusion would "contravene the legislature's intention to criminalize sexual activity between a school administrator or a school employee who teaches and a student at the school." *Id.* Other cases supporting this common understanding of the term "teacher." *See, e.g.*, *Gorman v. Town of New Milford*, No. CV085004455S, 2011 WL 5041895, at *6-*7 (Conn. Super. Ct. Sept. 28, 2011) (life skills instructor employed by school a "teacher" under common meaning of term for purposes of indemnification statute, even though other statutes defined teacher as a person who was certified as a teacher); *State ex rel. Chavis v. Sycamore City Sch. Dist. Bd. of Educ.*, 641 N.E.2d 188, 193 (Ohio 1994) (for purpose of teacher compensation statute, definition of teacher in Tenure Act did not control, as that definition was limited to the Act, and common meaning of the term encompassed tutors employed by the school because tutors provided instruction in accord with the common definition of "teacher."); *Johnson v. Burmaster*, 744 N.W.2d 900, 907 (Wis. Ct. App. 2007) (rejecting argument that parent volunteers were not teachers for purpose of licensing law, explaining that "[i]f, as here, a public school gives the duties of teaching to an unpaid, unlicensed nonprofessional, this does not mean that those duties cease to be 'teaching.'").

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

13

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable. As noted above, petitioner's habeas application is untimely by a number of years, and petitioner has provided no basis for disputing the calculations of the limitations period. Further, as explained above, it is not reasonably debatable that petitioner's actual innocence claim fails on three different bases, namely, that (1) it is not based on newly discovered evidence, but rather on a new legal theory; (2) it relates only to an element that

14

would still render him guilty of a lesser offense; and (3) it is in any event without merit. Accordingly, the Court should deny petitioner a certificate of appealability.

D.   *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion for summary judgment and dismiss the petition. If the Court accepts this recommendation, the Court should also deny the certificate of appealability.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ Paul J. Komives
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE

Dated: July 1, 2013

## PROOF OF SERVICE

    I hereby certify that a copy of this Report and Recommendation was served upon Joseph L. Brickley and Counsel of Record on this date.

Dated: July 1, 2013                              s/Lisa C. Bartlett
                                                Case Manager